Gregory OWENS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A02–1002–CR–390.

Court of Appeals of Indiana.

Nov. 23, 2010.

Rehearing Denied Jan. 12, 2011.

 

evidence that he failed to respond to police requests for contact. Second, he asserts that the prosecutor improperly commented in closing argument that Owens did not testify. Third, he alleges that after a witness violated a ruling that prohibited any evidence of prior domestic abuse, he moved for a mistrial, and the trial court erred in denying his motion.

We conclude that the State did not infringe upon Owens's Fifth Amendment privilege against self-incrimination by introducing evidence that he did not contact police. Although we find that the prosecutor's comment in closing argument was improper, it does not rise to the level of fundamental error requiring reversal. Finally, we conclude that the witness's violation of the ruling prohibiting evidence of prior domestic abuse was isolated, vague, and brief, and that the trial court admonished the jury to disregard C.R.'s statement, and thus, the trial court did not err in denying Owens's motion for mistrial. We therefore affirm Owens's conviction for child molesting.

James H. Voyles, Jr., Jennifer M. Lukemeyer, Voyles Zahn Paul Hogan & Merriman, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

### OPINION

CRONE, Judge.

### Case Summary and Issues

Gregory Owens appeals his conviction for class A felony child molesting,[1] arguing that reversal is warranted due to three alleged trial errors. Two of these alleged errors are based on the Fifth Amendment privilege against self-incrimination. First, he argues that his Fifth Amendment right was violated when the State introduced

### Facts and Procedural History

In 1999, Owens married G.O., who had a two-year-old daughter, C.R., from a previous relationship. They resided in Fishers, and Owens and G.O. had two children, born in 2000 and 2003. In October 2006, when C.R. was nine, G.O. moved out of the Fishers home with the three children, moved to Elwood, and divorced Owens.

In May 2007, shortly after C.R. turned ten, she disclosed to Elwood school officials and police that she had been molested by Owens on one occasion prior to moving to Elwood. C.R. stated that in the autumn of 2005, when she was eight years old, she was asleep in her bed when Owens came into her bedroom and lay on her bed,

---

1. Ind.Code § 35–42–4–3(a)(1).

waking her up. He was naked, and C.R. did not know what to do so she pretended to be asleep. Owens "stuck his finger" in her mouth and then "tried to stick his private part" in her mouth. Tr. at 127. C.R. clenched her teeth shut. Owens rubbed his penis against C.R.'s lips and teeth. *Id.* at 128, 183. Owens finally left. C.R. did not immediately tell anyone because she was afraid.

The Elwood police informed G.O. and the Department of Child Services ("DCS") of C.R.'s report of molestation. A multidisciplinary team was established to investigate C.R.'s allegation. Hamilton County Sheriff's Detective Scott McKinney arranged to have C.R. interviewed by a DCS caseworker at Chauncie's Place, a child advocacy center in Hamilton County. On June 6, 2007, C.R. was interviewed by the DCS caseworker as the other team members observed in a separate room. The team determined that C.R.'s allegation was substantiated. The following week, Detective McKinney tried to contact Owens on his cell phone more than once. During the week of June 18, 2007, Detective McKinney went to Owens's Hamilton County residence with a DCS caseworker, but Owens was not home. Detective McKinney left his business card with a message requesting that Owens contact him. Detective McKinney repeated the procedure two days later, but did not hear from Owens.

On June 22, 2007, Detective McKinney prepared a probable cause affidavit. On May 28, 2008, the State charged Owens with class A felony child molesting.[2] Prior to trial, Owens filed a motion in limine, which was granted by the trial court without objection by the State, to exclude any mention of his prior domestic battery conviction and any evidence of prior un-

charged misconduct. The State advised its witnesses of this ruling. Owens also filed a motion to exclude evidence of his silence when contacted by law enforcement officials. Appellant's App. at 62–63. The trial court granted the motion except insofar as that evidence explained the reason why Detective McKinney was unable to interview Owens during his investigation; the trial court permitted the State to bring up evidence of Owens's failure to contact police only during direct examination of Detective McKinney and in rebuttal closing argument if Owens argued in closing that the State did not perform a complete investigation. Tr. at 38–39.

Jury trial was held from December 14 to 16, 2009. The jury found Owens guilty as charged. He now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

### I. Constitutional Prohibition of Government Compelled Self–Incrimination

Owens contends that the State impermissibly used evidence of his right against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution as substantive evidence of his guilt. Owens argues that his right to remain silent was violated in two instances: (1) when the State elicited testimony from Detective McKinney that Owens failed to contact him; and (2) when the State referenced his failure to testify during closing argument. We address each in turn.

During the State's case-in-chief, Detective McKinney testified about his investigation. He testified that he tried to call Owens more than once but failed to reach him. *Id.* at 202. He also testified that he

---

**2.** The record before us does not disclose the reason why it took so long for the State to file

charges.

went to Owens's home and left his business card asking Owens to call him. The prosecutor asked, "[D]id you receive any contact from Mr. Owens?" *Id.* Detective McKinney replied, "I did not." *Id.* He then testified that he went to Owens's home a second time, and left his card again with the message "Please call me" on the back of the card. *Id.* at 203. Again, the prosecutor asked Detective McKinney whether he had any response from Owens, and the detective replied that he had not. *Id.* Owens raised no objection to Detective McKinney's testimony regarding Owens's failure to contact him. During Detective McKinney's cross-examination, Owens questioned him about his failure to speak with the Elwood police and school officials who initially interviewed C.R. or anyone from the Madison County DCS. During closing argument, the prosecutor did not comment on Detective McKinney's attempts to contact Owens and Owens's lack of response.

■ We initially note that although Owens filed a motion in limine to exclude evidence of his silence, he did not preserve the error for review because he failed to make a contemporaneous objection. *See McCarthy v. State,* 749 N.E.2d 528, 537 (Ind.2001) ("This Court has consistently held that a party may not assert on appeal a claim of trial court error in the overruling of a motion in limine seeking the exclusion of evidence unless the party objected to the evidence at the time it was offered."). In such circumstances, a "reviewing court may disregard the defendant's waiver of a particular issue for appellate review and reverse the defendant's conviction only if he has demonstrated the existence of fundamental error." *Purifoy*

*v. State,* 821 N.E.2d 409, 412 (Ind.Ct.App. 2005), *trans. denied.* "[I]n order to constitute fundamental error, an error must be blatant and the potential harm must be so substantial and apparent that to ignore it would clearly constitute a denial of due process." *Hinkle v. State,* 569 N.E.2d 349, 350 (Ind.Ct.App.1990) (citing *Burkes v. State,* 445 N.E.2d 983, 985 (Ind.1983)), *trans. denied* (1991).

> The mere fact that error occurred and that it was prejudicial will not suffice. That, after all, is the ordinary rule for reversal on appeal when the contemporaneous objection has been made. Rather the error must be one such that the defendant could not possibly have had a fair trial or such that this court is left with the conviction that the verdict or sentence is clearly wrong or of such dubious validity that justice cannot permit it to stand.

*Stewart v. State,* 567 N.E.2d 171, 174 (Ind. Ct.App.1991), *trans. denied.* Owens, however, cannot avoid procedural default because he fails to demonstrate that the admission of Detective McKinney's testimony constitutes error, let alone fundamental error.

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." [3] This privilege extends to the States through the Fourteenth Amendment. *Withrow v. Williams,* 507 U.S. 680, 689, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). The precise issue here is whether the Fifth Amendment prohibits the prosecution from using as substantive evidence in its case-in-chief a defendant's silence in response to police efforts to contact him. [4]

---

**3.** Although Owens does not present a separate argument based on the Indiana Constitution, he cites Article 1, Section 14, which provides

that no person "in any criminal prosecution shall be compelled to testify against himself."

**4.** The State asserts that it did not use Owens's silence as substantive evidence. We disagree.

As we address in more detail below, the federal circuit courts are split as to whether the Constitution permits the prosecution to use a defendant's pre-arrest, pre-*Miranda* silence as substantive evidence in its case-in-chief.

In *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the United States Supreme Court held that the Fifth Amendment prohibits the prosecution from commenting on a defendant's decision not to testify at trial. The *Griffin* Court reasoned that comment on the refusal to testify amounts to a penalty imposed by courts for exercising a constitutional privilege and that to allow such comment would impinge on the privilege against self-incrimination by making its assertion costly. *Id.* at 614, 85 S.Ct. 1229. The *Griffin* Court noted that a comment on the defendant's refusal to testify is "a remnant of the inquisitorial system of criminal justice, which the Fifth Amendment outlaws." *Id.* (citation and quotation marks omitted).

■ In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court held that the State's use for impeachment purposes of a defendant's silence at the time of arrest and after receiving *Miranda* warnings violated the Due Process Clause of the Fourteenth Amendment.[5] The *Doyle* Court explained,

> [E]very post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested.

Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Id.* at 618, 96 S.Ct. 2240 (citation omitted).

Then, in *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the Supreme Court addressed whether the defendant's failure to contact police for two weeks following a homicide could be used by the State to *impeach* the defendant when he took the stand at trial and asserted that he had killed the victim in self-defense. The *Jenkins* Court concluded that *Griffin* and the Fifth Amendment were inapplicable because the petitioner chose to testify, thereby waiving his right to remain silent. As to whether the Fourteenth Amendment was violated, the *Jenkins* Court observed that there had been no government action that induced the petitioner to remain silent before arrest. To clarify, the *Jenkins* Court stated, "The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings. Consequently, the fundamental unfairness present in *Doyle* is not present in this case. We hold that

---

Clearly, it was not used to impeach Owens since he did not testify. Rather, the State used it in its case-in-chief to establish that Owens did not contact Detective McKinney, and therefore it was used as substantive evidence.

5. The Supreme Court has specified that a person being arrested "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and

that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The purpose of *Miranda* warnings is to prevent the prosecution from using "statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 445, 86 S.Ct. 1602.

impeachment by use of prearrest silence does not violate the Fourteenth Amendment." *Id.* at 240, 100 S.Ct. 2124.[6]

The *Jenkins* Court expressly declined to consider the issue before us today: namely, whether the Fifth Amendment is implicated by the use, other than for impeachment, of a defendant's pre-arrest silence.[7] However, Justice Stevens addressed the issue in his concurring opinion:

> When a citizen is under no official compulsion whatever, either to speak or to remain silent, I see no reason why his voluntary decision to do one or the other should raise any issue under the Fifth Amendment. For in determining whether the privilege is applicable, the question is whether petitioner was in a position to have his testimony compelled and then asserted his privilege, not simply whether he was silent. *A different view ignores the clear words of the Fifth Amendment.* Consequently, I would simply hold that the admissibility of petitioner's failure to come forward with the excuse of self-defense shortly after the stabbing *raised a routine evidentiary question that turns on the probative significance of that evidence* and presented no issue under the Federal Constitution.

*Jenkins*, 447 U.S. at 243–44, 100 S.Ct. 2124 (Stevens, J., concurring) (emphases added).

Although the Supreme Court has not addressed whether a defendant's pre-arrest silence may be used as substantive evidence, the federal circuit courts have, with mixed results. Several federal circuit courts have held that the State's substantive use of a defendant's pre-arrest silence violates the Fifth Amendment privilege against self-incrimination. *See Combs v. Coyle*, 205 F.3d 269, 286 (6th Cir.2000) (defendant's pre-arrest statement to police, "talk to my lawyer," was invocation of privilege against self-incrimination, and prosecutor's closing argument comment on defendant's statement violated Fifth Amendment), *cert. denied*, *Bagley v. Combs*, 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533; *United States v. Burson*, 952 F.2d 1196, 1201 (10th Cir.1991) (defendant's actions in refusing to cooperate with I.R.S. criminal agents investigating a second tax fraud suspect constituted an invocation of his right to remain silent and State's use in its case-in-chief of defendant's silence violated Fifth Amendment), *cert. denied*, 503 U.S. 997, 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992); *Coppola v. Powell*, 878 F.2d 1562, 1568 (1st Cir.1989) (defendant's pre-arrest statement to police that "if you think I'm going to confess to you, you're crazy[,]" invoked privilege against self-incrimination, and State's use of statement in its case-in-chief violated Fifth Amendment), *cert. denied*, 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 383; *United States ex rel. Savory v. Lane*, 832 F.2d

**6.** Two years later, the Supreme Court held that a defendant's silence after arrest but before *Miranda* warnings may be used for *impeachment* purposes without violating due process. *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982).

**7.** Specifically, the *Jenkins* Court stated,
In [*Raffel v. United States*, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926)], the defendant's decision not to testify at his first trial was an invocation of his right to remain silent protected by the Fifth Amendment.

In this case, the petitioner remained silent before arrest, but chose to testify at his trial. *Our decision today does not consider whether or under what circumstances prearrest silence may be protected by the Fifth Amendment.* We simply do not reach that issue because the rule of *Raffel* clearly permits impeachment even if the prearrest silence were held to be an invocation of the Fifth Amendment right to remain silent. 447 U.S. at 238 n.2 (emphasis added).

1011, 1017–18 (7th Cir.1987)[8] (State's use in its case-in-chief and in closing argument of murder defendant's pre-custody statement to police that "he didn't want to talk about it, he didn't want to make any statements" violated Fifth Amendment).[9]

In the main, these cases rely heavily on *Griffin,* which involved only the defendant's decision not to testify at trial, and expand its scope beyond the trial setting. *See Lane,* 832 F.2d at 1017 ("*Griffin* ... applies equally to a defendant's silence before trial, and indeed, even before arrest."); *Burson,* 952 F.2d at 1201 ("The general rule of law is that once a defendant invokes his right to remain silent, it is impermissible for the prosecution to refer to any Fifth Amendment rights which defendant exercised."). These courts frequently opine that the privilege against self-incrimination must be given a broad scope, quoting the Supreme Court: "'It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" *Coppola,* 878 F.2d at 1565 (quoting *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct.

1653, 32 L.Ed.2d 212 (1972)); *see also Combs,* 205 F.3d at 283 ("The Supreme Court has given the privilege against self-incrimination a broad scope.... In a pre-arrest setting as well as in a post-arrest setting, it is clear that a potential defendant's comments could provide damaging evidence that might be used in a criminal prosecution; the privilege should thus apply.") (citations omitted); *Burson,* 952 F.2d at 1200 ("The invocation of the privilege against self-incrimination must be given a liberal construction."). Further, these courts note that the "right to remain silent, unlike the right to counsel, attaches before the institution of formal adversary proceedings." *Lane,* 832 F.2d at 1017; *see also Coppola,* 878 F.2d at 1565 ("[T]he privilege is not limited to persons in custody or charged with a crime; it may also be asserted by a suspect who is questioned during the investigation of a crime."). Significantly, many of the cases specifically address whether the defendant *invoked* the right to remain silent and answer that question in the affirmative. *See Combs,* 205 F.3d at 286; *Burson,* 952 F.2d at 1200; *Coppola,* 878 F.2d at 1567.[10] Finally, the important policies of the Fifth Amendment are expounded upon:

**8.** Other Seventh Circuit cases related to this discussion include *Ouska v. Cahill–Masching,* 246 F.3d 1036 (7th Cir.2001), and *United States v. Hernandez,* 948 F.2d 316 (7th Cir. 1991). However, Indiana state courts are not required to follow Seventh Circuit precedent. *Villas W. II of Willowridge Homeowners Ass'n v. McGlothin,* 885 N.E.2d 1274, 1282 (Ind. 2008), *cert. denied,* — U.S. ——, 129 S.Ct. 1527, 173 L.Ed.2d 657 (2009).

**9.** *United States v. Caro,* 637 F.2d 869 (2nd Cir.1981) is sometimes cited as standing for the proposition that the State's substantive use of pre-arrest silence is unconstitutional. Although the *Caro* Court stated, "[W]e are not confident that *Jenkins* permits even evidence that a suspect remained silent before he was

arrested or taken into custody to be used in the Government's case in chief," *id.* at 876, that statement is dicta. The *Caro* Court assumed arguendo that the State's use in its case-in-chief of defendant's pre-arrest silence was error, but found that any error was harmless beyond a reasonable doubt because the defendant took the stand, and evidence of his silence could have been used to impeach him. *Id.*

**10.** Even though the *Lane* Court did not specifically state that the defendant had invoked the right to silence, the defendant did make it clear that he did not want to talk by stating that "he didn't want to talk about it, he didn't want to make any statements." 832 F.2d at 1017.

The privilege against self-incrimination reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates "a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load"; our respect for the inviolability of the human personality and of the right of each individual "to a private enclave where he may lead a private life"; our distrust of self-deprecatory statement; and our realization that the privilege, while sometimes "a shelter to the guilty," is often "a protection to the innocent."

*Combs*, 205 F.3d at 285 (quoting *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)).

On the other hand, some circuit courts have held that the use as substantive evidence of a defendant's pre-arrest, pre-*Miranda* silence does not run afoul of the U.S. Constitution. *See United States v. Frazier*, 408 F.3d 1102, 1111 (8th Cir.2005) (holding that officer's testimony regarding defendant's silence when questioned during his arrest but before *Miranda* warnings were given was admissible, and prosecutor's comment on defendant's silence was proper because there was "no government-imposed compulsion to speak," and noting that it was not a case where defendant refused to answer questions in the face of interrogation), *cert. denied*, 546 U.S. 1151, 126 S.Ct. 1165, 163 L.Ed.2d 1130 (2006); *United States v. Oplinger*, 150 F.3d 1061, 1067 (9th Cir.1998) (testimony of defendant's employer that defendant was silent when confronted with theft allegations was admissible as substantive evidence in State's case-in-chief and could be permissibly commented on by State in closing argument without offending any constitutional rights), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135 (9th Cir.2010); *United States v. Zanabria*, 74 F.3d 590, 593 (5th Cir.1996) (State could elicit testimony of and comment on defendant's failure to mention duress when cocaine was found in his suitcase during a customs search at the airport); *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir.1991) (testimony of customs agent that defendant was not surprised during search of suitcase and discovery of cocaine and closing argument comment thereon did not violate defendant's due process rights because defendant had not been given *Miranda* warnings); *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir.1985) (officer's testimony that defendants made no effort to explain their presence at scene of crime was admissible because they had not yet been given *Miranda* warnings), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986).

Generally, these decisions are based on the rationale that the defendant's pre-arrest silence may be used as substantive evidence by the State because the defendant was not under any government compulsion to speak or induced by the government to remain silent via *Miranda* warnings. *See Frazier*, 408 F.3d at 1111 ("The crux of our inquiry today is to determine at what point a defendant is under official compulsion to speak because silence in the face of such compulsion constitutes a statement for purposes of a Fifth Amendment inquiry.") (quotation marks omitted); *Zanabria*, 74 F.3d at 593

("The fifth amendment protects against compelled self-incrimination, but does not ... preclude the proper evidentiary use and prosecutorial comment about *every* communication or *lack* thereof by the defendant which may give rise to an incriminating inference."). The *Oplinger* Court underscored that the plain text of the Fifth Amendment states that " 'no person shall be *compelled* in any criminal case to be a witness against himself.' " 150 F.3d at 1067. For further support, the *Oplinger* Court remarked that the Supreme Court has " 'never on any ground ... applied the Fifth Amendment to prevent the otherwise proper acquisition or use of evidence which ... did not involve compelled testimonial self-incrimination of some sort.' " *Id.* (quoting *Fisher v. United States*, 425 U.S. 391, 399, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). In addition, the *Oplinger* Court noted that it was following the reasoning of Justice Stevens's concurring opinion in *Jenkins*, in which he stated, " 'For in determining whether the privilege is applicable, the question is *whether petitioner was in a position to have his testimony compelled and then asserted his privilege, not simply whether he was silent.*' " *Id.* at 1066 (quoting *Jenkins*, 447 U.S. at 241, 100 S.Ct. 2124) (Stevens, J., concurring). *See also* Michael J. Hunter, *The Man on the Stairs Who Wasn't There: What Does a Defendant's Pre–Arrest Silence Have to Do with Miranda, the Fifth Amendment, Or Due Process?*, 28 Hamline L.Rev. 277 (2005) (discussing circuit court split and arguing that the courts that have excluded evidence of silence based on *Griffin* have done so on an unsupported constitutional analysis).

Indiana courts have not squarely addressed the issue.[11] In *Clancy v. State*, 829 N.E.2d 203 (Ind.Ct.App.2005), *trans. denied*, Clancy argued on appeal that "the State violated his Fifth Amendment right to silence when, during its case-in-chief, it questioned a police officer regarding Clancy's failure to contact the officer to provide his version of the accident while the investigation was ongoing but before Clancy was charged." *Id.* at 211. At trial, Clancy objected and moved for mistrial, which the trial court denied. The *Clancy* Court began by noting that "[r]eference to Clancy's pre-arrest silence during the State's case-in-chief was, at best, highly dubious, and the State proceeds at it peril in such situations." *Id.* However, because the trial court had admonished the jury, the court concluded that the admonishment "cured any error in the State's elicitation of Clancy's pre-arrest silence during its case-in-chief." *Id.* at 212. Thus, the *Clancy* Court was not required to make a definitive ruling on the constitutionality of the State's use of the silence.

██ We now confront the issue as presented before us. First, we recognize that the privilege against self-incrimination serves laudable values and to promote these values we must not unduly burden the assertion of the privilege. Second, we observe that *Griffin* specifically addressed the situation where the defendant chose not to testify at trial. However, the right can be invoked outside the courtroom: "[the privilege against self-incrimination] can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness

---

**11.** On a related matter, we note that the Indiana Supreme Court has granted transfer in *Akard v. State*, 924 N.E.2d 202 (Ind.Ct.App. 2010), in which another panel of this Court held, among other things, that the State's use as substantive evidence of a police officer's testimony regarding defendant's *post*-arrest, pre-*Miranda* silence violated the Fifth Amendment.

reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar*, 406 U.S. at 444, 92 S.Ct. 1653; *see also Lane*, 832 F.2d at 1017 ("right to remain silent, unlike the right to counsel, attaches before the institution of formal adversary proceedings.").

■ Under the line of cases holding that the Fifth Amendment is not offended by the State's substantive use in its case-in-chief of a defendant's pre-arrest, pre-*Miranda* silence, Owens's silence would not be protected by the Fifth Amendment. In these cases there was no "government-imposed compulsion to speak." *Frazier*, 408 F.3d at 1111. Here, Owens's "silence" consists of his lack of response to Detective McKinney's efforts to make contact with him. Although Owens's silence occurred within the context of a criminal investigation, Owens was clearly under no governmental compulsion to speak *at that point*. However, in our view, the *Frazier*, *Oplinger*, and *Zanabria* Courts express an overly restrictive notion of when government compulsion to speak takes place. Government compulsion to speak occurs not only when one is taken into custody to be questioned or after the provision of *Miranda* warnings; it also occurs when the State uses at trial a defendant's choice to remain silent to imply guilt. *See Combs*, 205 F.3d at 285 ("[T]he violation of the Fifth Amendment occurred not when the defendant remained silent, but when that silence was later used against him at his criminal trial."). The very threat that the State may use a person's silence as self-incriminating evidence of guilt at trial places one on the horns of a dilemma during even investigatory proceedings: that is, whether to make statements that could later be used to incriminate oneself or to remain silent. *See id.* ("But the prohibition against compelled self-incrimi-nation is another way of expressing the right not to incriminate oneself. After all, the only means of compelling a person to incriminate himself is to penalize him if he does not."). Such a dilemma erodes the privilege against self-incrimination because the State's comment on one's silence makes the assertion of that privilege more costly. In addition, the use of the defendant's silence at trial puts pressure on the defendant to take the stand to explain his silence further burdening the privilege.

Nevertheless, even under the cases holding that a defendant's pre-arrest, pre-*Miranda* silence is protected by the Fifth Amendment, Owens's lack of response to Detective McKinney is outside the ambit of the Fifth Amendment. Recall that in the majority of those cases, the court specifically considered whether the defendant invoked the right to remain silent and concluded that the defendant's statement or action was an invocation of the right. *See Combs*, 205 F.3d at 286; *Burson*, 952 F.2d at 1200; *Coppola*, 878 F.2d at 1567; *see also Berghuis v. Thompkins*, —— U.S. ——, 130 S.Ct. 2250, 2260, 176 L.Ed.2d 1098 (2010) (holding that during police interrogation right to remain silent must be invoked unambiguously). Based on these cases and the particular circumstances present here, Owens's mere lack of response does not support a finding that he invoked the right to remain silent. Perhaps Owens did not respond because the wind blew Detective McKinney's cards away, or perhaps Owens was very ill or too busy, or perhaps he just did not like the police. Also, since Detective McKinney never told Owens why he wanted to talk to him, there is no basis to conclude that Owens even would have known that he was the subject of an investigation. Based on the foregoing, we conclude that the State did not infringe upon Owens's Fifth Amendment privilege against self-incrimination by introducing evidence that Detec-

tive McKinney did not hear from Owens. It follows that no error, let alone fundamental error, occurred in the admission of the testimony.

We emphasize that we do not today determine that all pre-arrest, pre-*Miranda* silences are unprotected by the Fifth Amendment and that our holding is strictly limited to the particular facts currently before us. On another note, we observe that in situations such as this one, the Rules of Evidence may be applied without unnecessarily invoking the Constitution. Detective McKinney's testimony regarding Owens's lack of response, given that he was under no compulsion to respond and may not even have been aware of the reason for Detective McKinney's communication, may well have been inadmissible based upon relevancy or unfair prejudice. *See* Ind. Evidence Rule 402 ("Evidence which is not relevant is not admissible"); Ind. Evidence Rule 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."). Although the State argues that the thoroughness of the investigation was at issue and the testimony was necessary for "rounding out the course of the investigation," Detective McKinney's thoroughness consists of what he actions he took, not what actions Owens did not take. Appellee's Br. at 10. Thus, it is questionable whether Owens's failure to contact Detective McKinney is necessary to assess Detective McKinney's diligence. In any event, our point here is that basic evidentiary rules of admissibility should not be overlooked.

## II. Prosecutor's Reference to Owens's Decision Not to Testify

During rebuttal closing argument, the prosecutor made the following comment:

[T]he uncorroborated testimony of a child victim is sufficient to support [a] conviction of child molesting. Ultimately, you can rely solely on [C.R.'s] testimony. And in all honesty, in large part, if not exclusively, that's what you have to rely on. Because the reality is, other than Mr. Owens, she is the only one who knows what happened to her that night. She is the only one who knows what happened to her that night.

Tr. at 286. Owens did not contemporaneously object to this statement. After the State concluded its rebuttal and outside the presence of the jury, Owens objected that the State had improperly commented on his failure to testify and moved for mistrial. The trial court found that the prosecutor's statement was not a comment on Owens's decision not to testify but rather referred to the fact that the only testimony presented was from the victim, and it denied the motion for mistrial. *Id.* at 293.

■ Owens contends that the prosecutor improperly referred to his failure to testify in closing argument. This contention is a claim of prosecutorial misconduct. When a claim of prosecutorial misconduct is properly preserved, we " 'determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected.' " *Booher v. State,* 773 N.E.2d 814, 817 (Ind.2002) (quoting *Coleman v. State,* 750 N.E.2d 370, 374 (Ind.2001)).[12]

■ Here, Owens did not immediately object to the prosecutor's comment but waited until the State's closing argument was concluded. In addition, al-

---

**12.** "The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Booher,* 773 N.E.2d at 817.

though Owens moved for a mistrial, he did not request an admonishment. "To preserve an issue regarding the propriety of a closing argument for appeal, a defendant must do more than simply make a prompt objection to the argument. Defendant must also request an admonishment, and if further relief is desired, defendant must move for a mistrial." *Wright v. State*, 690 N.E.2d 1098, 1111 (Ind.1997). "Failure to request an admonishment or move for a mistrial results in waiver of the issue." *Etienne v. State*, 716 N.E.2d 457, 461 (Ind. 1999). Because Owens did not make a contemporaneous objection and did not request an admonishment, his claim of prosecutorial misconduct is procedurally foreclosed and reversal on appeal requires a showing of fundamental error. For prosecutorial misconduct to constitute fundamental error, it must "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm." *Booher*, 773 N.E.2d at 817 (citation, quotation marks, and brackets omitted); *see also Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006) ("Where a claim of prosecutorial misconduct has not been properly preserved, our standard for review is different from that of a properly preserved claim.").

■ The State contends that the trial court properly found that the State did not comment on Owens's failure to testify. We disagree. The Fifth Amendment prohibits the prosecutor from commenting at trial on the defendant's decision not to testify. *Ziebell v. State*, 788 N.E.2d 902, 913 (Ind.Ct.App.2003). "Such a comment violates a defendant's privilege against compulsory self-incrimination if the statement 'is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence.' " *Id.* (quoting *Boatright v.*

*State*, 759 N.E.2d 1038, 1043 (Ind.2001)). However, our supreme court has explained that if the prosecutor's comment in its totality is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal. *Boatright*, 759 N.E.2d at 1043; *see also Hopkins v. State*, 582 N.E.2d 345, 348 (Ind. 1991). The prosecutor may in fact comment on the uncontradicted nature of the State's evidence without running afoul of the Fifth Amendment. *Martinez v. State*, 549 N.E.2d 1026, 1028 (Ind.1990). The defendant bears the burden of showing that a comment improperly penalized the exercise of the right to remain silent. *Moore v. State*, 669 N.E.2d 733, 739 (Ind. 1996).

*Davis v. State* presents an instructive comparison to the prosecutor's comment in this case. 685 N.E.2d 1095 (Ind.Ct.App. 1997). Davis fled the scene after he crashed a car into a tree. When the police officer caught him and asked him why he fled, Davis replied, "I took it." *Id.* at 1097. At trial, the police officer testified as to what Davis said, and Davis did not testify. During closing argument, the prosecutor commented that "Davis said he took the car. There is nothing to controvert that. There is no evidence saying that isn't so. There's not even an argument that he didn't say that." *Id.* at 1089 (brackets omitted). The *Davis* court concluded:

> By calling attention to the defendant's alleged admission and pointing out that there was no claim to the contrary, the prosecutor indirectly brings to the jury's attention the fact that Davis did not deny this allegation. Davis was the only one who could have denied that this statement was made since only he and Officer Kaszas were present at the time. Thus, a reasonable jury could have taken that comment as an invitation to consider Davis' failure to testify as an infer-

ence of guilt. We conclude that the prosecutor's comments were improper. *Id.* at 1098.

In the case at bar, the prosecutor's comment was less indirect than that in *Davis.* Here, the prosecutor stated, "Ultimately, you can rely on [C.R.'s] testimony. And in all honesty, in large part, if not exclusively, that's what you have to rely on. Because the reality is, other than Mr. Owens, she is the only one who knows what happened to her that night." Tr. at 286. The prosecutor highlighted the fact that C.R.'s testimony was the only evidence before the jury and then explicitly referred to Owens by name and directly compared his knowledge to C.R.'s. We conclude that the jury reasonably could have interpreted the prosecutor's comment as an invitation to draw an adverse inference from Owens's failure to testify. *Cf. Hopkins,* 582 N.E.2d at 347–48 (prosecutor's statement that "it is certainly worthy of comment that you never heard any testimony during this trial that the defendant was anywhere else" was a comment on evidence from five different witnesses to whom defendant made admissions concerning the crime and not on the absence of testimony from the defendant); *Channell v. State,* 658 N.E.2d 925, 931–32 (Ind.Ct.App.1995) (prosecutor did not impermissibly refer to defendant's failure to testify where prosecutor stated, "What testimony did you hear from that witness stand that this Defendant consumed any alcohol or had any drug on that day? Absolutely none. There's no testimony he had any alcohol or any drug or was talking under the influence of alcohol or drugs.") (brackets omitted), *trans. denied.*

■ Although we have determined that the prosecutor's comment was improper, we must consider whether it made a fair trial impossible or constituted a blatant violation of basic and elementary principles of due process or created an undeniable and substantial potential for harm. *See Booher,* 773 N.E.2d at 817. Our supreme court has emphasized the narrow applicability of the fundamental error doctrine. *Taylor v. State,* 717 N.E.2d 90, 93–94 (Ind. 1999). Here, the prosecutor's comment was an isolated statement. As to the evidence of Owens's guilt, the victim testified and was vigorously cross-examined and re-cross-examined. Tr. at 124–88. The victim's mother and Detective McKinney also testified and were cross-examined. Accordingly, we conclude that the prosecutor's improper comment did not rise to the level of fundamental error.

### III. Impermissible Evidence of Prior Uncharged Misconduct

■ During the State's case-in-chief, C.R. testified regarding the molestation. The prosecutor asked C.R., "Now, after—immediately after this happened, did you tell anybody about this?" *Id.* at 128. C.R. replied, "No. I was really afraid to. Um, Greg was—he abused us." *Id.* Owens objected that C.R.'s testimony was a violation of the order in limine. Outside the presence of the jury, Owens requested a mistrial. The State argued that an admonishment would cure any prejudice, as the reference was made by a young child and was a generic statement that did not refer to any specific form of abuse. The trial court found that C.R.'s statement did not rise to the level of placing Owens in a position of grave peril, as the statement was "fairly generic," and further, it was not introduced to show action in conformity with the charge but was her explanation as to why she did not immediately tell anyone about the molestation. *Id.* at 134–35. The trial court denied Owens's motion for mistrial, but admonished the jury as follows: "I'm going to admonish you at this point in time not to consider in any

way the last statement from the witness. You shall disregard her last statement in regards to the reason why she did not tell anyone immediately after the incident." *Id.* at 130.

■■■■ Owens asserts that the trial court erred in denying his motion for mistrial when C.R. violated the order in limine not to introduce evidence of Owens's prior acts of domestic abuse by testifying that Owens "abused us." *Id.* at 128. Motions in limine are useful tools to prevent the admission of evidence of prior bad acts pursuant to Indiana Rule of Evidence 404(b), which prohibits the admission of "other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." Rule 404(b) is intended to prevent the jury from using a defendant's past propensities to determine whether he or she is guilty of the current crime, the so called "forbidden inference." *Wilhelmus v. State,* 824 N.E.2d 405, 414 (Ind.Ct.App.2005) (citation and quotation marks omitted). As a general rule, evidence of a defendant's prior criminal history is highly prejudicial and should not be admitted. *Hyppolite v. State,* 774 N.E.2d 584, 593 (Ind.Ct.App. 2002), *trans. denied* (2003). However, the "grant of a motion for mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error." *Francis v. State,* 758 N.E.2d 528, 532 (Ind.2001). The decision to grant or deny a motion for mistrial lies within the discretion of the trial court. *Id.* "On appeal, the trial judge's discretion in determining whether to grant a mistrial is afforded great deference because the judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury." *McManus v. State,* 814 N.E.2d 253, 260 (Ind.2004), *cert. denied,* 546 U.S. 831, 126 S.Ct. 53, 163 L.Ed.2d 83 (2005). "When determining

whether a mistrial is warranted, we consider whether the defendant was placed in a position of grave peril to which he should not have been subjected; the gravity of the peril is determined by the probable persuasive effect on the jury's decision." *James v. State,* 613 N.E.2d 15, 22 (Ind. 1993). " '[R]eversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings.' " *Warren v. State,* 757 N.E.2d 995, 999 (Ind.2001) (quoting *Bradley v. State,* 649 N.E.2d 100, 108 (Ind.1995)).

■■■■ Here, C.R.'s reference was isolated, vague, brief, and was not offered to show action in conformance with the alleged offense. The reference was inadvertent, and the State made no other mention of Owens's prior domestic abuse during the trial. In addition, the trial court admonished the jury to disregard C.R.'s statement. A timely and accurate admonishment is presumed to cure any error in the admission of evidence. *Lay v. State,* 659 N.E.2d 1005, 1009 (Ind.1995). Even where a witness violates an order in limine, a trial court may determine that a mistrial is not warranted and, instead, admonish the jury to disregard the improper testimony. *See Alvies v. State,* 795 N.E.2d 493, 507 (Ind.Ct.App.2003) (holding that where police officer made statement in violation of ruling on motion in limine, trial court's admonishment to jury was not inadequate and therefore denial of mistrial not an abuse of discretion), *trans. denied.* Owens has failed to demonstrate that C.R.'s comment placed him in a position of grave peril. We conclude that the trial court did not abuse its discretion in denying Owens's motion for mistrial. *See Lucio v. State,* 907 N.E.2d 1008, 1011 (Ind. 2009) (holding that denial of mistrial was not abuse of discretion where statement was fleeting, inadvertent, and only a minor

part of evidence against defendant and trial court admonished jury to disregard statement).

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.