**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

FILED

Jun 26 2012, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRUCE W. GRAHAM**
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LARRY R. COX, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A04-1111-CR-584 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Thomas H. Busch, Judge
Cause No. 79D02-0810-FA-37

**June 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Larry R. Cox appeals his fifty-year aggregate sentence for ten counts of Class A felony child molesting and five counts of Class C felony child molesting. He contends that the trial court committed fundamental error in admitting evidence of his pre-arrest, pre-*Miranda* silence and request for counsel at trial and that his sentence is inappropriate in light of the nature of the offenses and his character. Because we find that the trial court did not commit fundamental error in admitting that evidence and that Cox has failed to persuade us that his sentence is inappropriate in light of the nature of the offenses and his character, we affirm.

## Facts and Procedural History

Cox met S.H. ("Mother") in September 2001 when they both worked on a hog farm. Mother had two children, a daughter and a son, D.H. ("Victim"), who was born on June 19, 1999. Cox and Mother began dating six or eight months after that and moved in together a few months later. The two remained a couple until 2007 when Mother broke up with Cox because she was ready to move on. However, because Cox did not have anywhere else to go, he continued to live at the house with Mother and her children until early 2008, often watching the children when Mother was at work. Even after Cox moved out, he would still watch Mother's children at his own house, which was close by. Mother thought that her children, specifically her son, had a good relationship with Cox.

However, unbeknownst to Mother, Cox began molesting Victim before Victim was in kindergarten. Tr. p. 189. Cox would orally and anally sodomize Victim, and he told Victim that if he did not do as he was told, Cox would cut out his tongue. *Id.* at 182.

2

The molestations took place in all four houses Victim's family lived in with Cox as well as in Cox's house after he and Mother broke up. Victim estimated that he was sodomized at least a hundred times. *Id.* at 208. The molestations also started to take place more frequently after Mother started working the night shift in 2006. *Id.* at 50, 213.

In June 2008, Victim went to Texas to visit his uncles. While Victim was in Texas, Mother and Cox had a fight during which Cox held Mother's arms down and screamed, "You f***ing bitch, I ought to just kill you." *Id.* at 56-57. Mother called her sister, who reported the incident to the police. Mother obtained a restraining order against Cox.

Mother picked Victim up from the airport when he returned from Texas on July 31, 2008, and told him that Cox was no longer allowed to come to the house or contact the family. That night, Victim stayed at Mother's sister's house because Mother had to work. Victim told his cousin, D.D. ("Cousin"), about the molestations. Victim told Cousin that he could not tell anyone because Victim would get hurt. Cousin that thought Victim "would get hurt more if he didn't" tell, so he told his mother, Angelia, after Victim left the house. *Id.* at 100-01. Angelia called Mother and told her what had happened, but by that time, Victim was in Illinois with his father and sister. Mother soon joined the family in Illinois but waited until she was home before she asked Victim about what had happened.

Once Mother and Victim were back in Indiana, Mother asked Victim if he had anything to tell her, to which Victim replied, "Yeah, Larry raped me." *Id.* at 67. Mother called her brother, a U.S. Marshal, for advice on what to do next. On August 10, 2008,

Mother took Victim to the Tippecanoe County Sheriff's Department where they reported the crime to Deputy Sheriff Terry Ruley. Detective Nathan Brown was assigned to the investigation, and child forensic interviewer Cheri Pruitt interviewed Victim at the Child Advocacy Center on August 12, 2008.

Detective Brown also attempted to talk to Cox about the allegations. Detective Brown called Cox at his place of employment, CBA Tire, and they agreed to meet at the Sheriff's Department after-hours at 6:30 p.m. for an interview. However, when Detective Brown showed up at 6:30 p.m., there was a note from Cox saying that he had been there at 3:30 p.m. along with a phone number to call. Detective Brown called the number, but no one answered. The next morning, Detective Brown called CBA Tire again and talked to Cox. Cox said that he was busy and would have to get back to him. Cox did not call back that day, so the next day Detective Brown went to CBA Tire and spoke to Cox in person. Cox told Detective Brown that he was busy and could not commit to anything at that time. Cox also told Detective Brown that he had spoken to an attorney, who told him that Detective Brown should talk to the attorney. But Cox went on to say that his uncle was a detective and told him that he should go ahead and talk to Detective Brown. However, Cox never spoke to Detective Brown about the allegations.

Detective Brown was on vacation for a week, and when he returned, he had not heard anything from Cox, so he called him. Cox said that he was going to talk to his attorney and then get back in touch with Detective Brown. Three days later, Detective Brown had yet to hear from Cox, so he called him at work. Cox again said he was going

4

to try to call his attorney and would get back in touch with Detective Brown, but he never did.

Detective Brown and Pruitt then continued the investigation by talking to Cousin, Angelia, Mother, and Victim's father. After conducting those interviews, Detective Brown served a warrant on Cox on October 3, 2008.

The State charged Cox with fifteen counts of child molesting – ten Class A felonies and five Class C felonies. A jury trial was held on October 23, 2009, and Cox was found guilty on all counts. A panel of this Court reversed and remanded this case to the trial court, *Cox v. State*, 937 N.E.2d 874 (Ind. Ct. App. 2010), *trans. denied*, and a second trial was held on September 15, 2011.

During the State's opening argument, it noted Cox's failure to cooperate with Detective Brown's requests for an interview. Detective Brown also testified to all of his attempts to interview Cox and how he was never successful. When the prosecutor asked Detective Brown why he set up the appointment after hours, Cox's counsel objected on the ground of relevance, but the objection was overruled. Tr. p. 226. Cox's counsel did not object again during Detective Brown's testimony. Detective Brown also testified that Cox had told him that he should speak to his attorney and that Cox twice said that he would talk to his attorney and then contact Detective Brown. *Id.* at 229-31.

The jury found Cox guilty on all fifteen counts. At sentencing, the trial court found Cox's criminal history, which included three misdemeanor convictions for cruelty to animals, domestic battery, and criminal conversion, to be an aggravating factor. Other aggravating factors included the ongoing nature of the crime, the young age of the victim,

5

and Cox's violation of his position of trust with the victim. *Id.* at 322. The trial court found Cox's community and family support to be a mitigating factor. *Id.* at 323. The trial court imposed fifty-year sentences for the ten Class A felony convictions and eight-year sentences for the five Class C felony convictions, all to run concurrently, for an aggregate sentence of fifty years.

Cox now appeals.

## Discussion and Decision

Cox raises two issues on appeal: (1) whether the trial court committed fundamental error in admitting evidence of his pre-arrest, pre-*Miranda* silence and his request for counsel and (2) whether his sentence is inappropriate.

## I. Pre-Arrest Silence and Request for Counsel

Cox contends that the trial court committed fundamental error in admitting evidence of his pre-arrest, pre-*Miranda* silence and his request for counsel. He argues that the State impermissibly used evidence of his refusal to speak to Detective Brown and his assertion of his right to speak with counsel as substantive evidence of his guilt. We disagree.

A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Kimbrough v. State*, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009). The trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* We do

6

not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*.

While Cox contends that the admission of this evidence was in error, he did not object to its admission at trial.[1] Tr. p. 226-33. In order to preserve an issue for appeal, a contemporaneous objection must be made when the evidence is introduced at trial. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). If no such objection is made, the issue is waived for appellate review. *See Kubsch v. State*, 784 N.E.2d 905, 923 (Ind. 2003) ("Failure to object at trial to the admission of evidence results in waiver of that issue on appeal."). Nevertheless, Cox claims the admission of this evidence constitutes fundamental error.

The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of the issue on appeal. *Jewell v. State*, 887 N.E.2d 939, 940 n.1 (Ind. 2008). The fundamental error exception is extremely narrow and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process.

---

[1] Cox's counsel did object during Detective Brown's testimony, but only once on the grounds of relevance when he was asked specifically why he set up one particular meeting after his normal work hours. Tr. p. 226. While we question the probative value of this testimony, we find any error to be harmless; it was only one question asked during Detective Brown's entire testimony and Detective Brown's answer, "I was trying to be accommodating. He said he's busy, I'm trying to accommodate him," *id.*, did not contribute to the verdict. As in *Owens v. State*, 937 N.E.2d 880 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*, we are concerned about the relevancy of this testimony, but Cox only made one objection to this testimony and makes no argument of fundamental error with regard to relevancy on appeal.

*Brown*, 929 N.E.2d at 207.  This exception is available only in egregious circumstances. *Id.*

We find that the admission of this evidence does not constitute an error, much less a fundamental error.  Cox argues that the trial court erred in admitting evidence of his silence; however, Cox never asserted silence.  Silence includes not only muteness, but the statement of a desire to remain silent, *Kubsch*, 784 N.E.2d at 914, but Cox did neither here.  He spoke with Detective Brown on many occasions; the evidence admitted at trial consisted of Cox's failure to follow through on his agreements to meet with or contact Detective Brown.  This does not constitute the silence that the Fifth Amendment is designed to protect.

Further, we recently decided *Owens v. State*, 937 N.E.2d 880 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*, which addresses the precise question at issue in this case.  In *Owens*, the Hamilton County Sheriff's Department attempted to question Owens about allegations of child molesting.  Police attempted to contact Owens on his cell phone more than once, went to Owens' residence, and left a business card with a message requesting that Owens contact them, all without success.  *Id.* at 884.  At trial, this information was admitted into evidence through the testimony of the detective in charge of the case. Owens raised no objection to the testimony about his failure to contact the police.

On appeal, we found that the trial court did not commit fundamental error in admitting the testimony.  *Id.* at 892.  We held that "Owens's mere lack of response does not support a finding that he invoked the right to remain silent."  *Id.* at 891.  Because

8

Owens had no opportunity to assert his Fifth Amendment right and did not actually do so, we found that the admission of the evidence was not a fundamental error.

The facts in this case are analogous to those in *Owens*. In both cases, the defendant failed to cooperate with law enforcement during the investigation of a crime. Cox's failure to accommodate police requests for an interview is not an invocation of the right to remain silent. We therefore find, like we did in *Owens*, that Cox's Fifth Amendment right to silence was not implicated in this case, and the trial court did not commit fundamental error in admitting evidence of his failure to cooperate with Detective Brown during the investigation.[2]

As for Cox's contention that this evidence violated his Sixth Amendment right to counsel, we also find this argument to be without merit. Detective Brown testified that Cox told him that he should speak to his attorney and that Cox twice said that he would talk to his attorney and then contact Detective Brown. Tr. p. 229-31. Those statements by Cox are in no way an assertion of the right to counsel as contemplated under the Sixth Amendment.

The right to counsel guaranteed under the Sixth Amendment attaches only during custodial interrogation and "at the initiation of adversary criminal proceedings." *Oberst v. State*, 935 N.E.2d 1250, 1255 & n.1 (Ind. Ct. App. 2010) (citing *Davis v. United States*,

---

[2] The State asserts that "*Owens*, thus, makes it clear that this Court has decided to follow the jurisdictions which have held that the Fifth Amendment is not offended by the State's substantive use in its case-in-chief of a defendant's pre-arrest, pre-*Miranda* silence." Appellee's Br. p. 13. The State mischaracterizes *Owens*' holding. In fact, the *Owens* Court criticized the line of federal cases holding that the State's use as substantive evidence of a defendant's pre-arrest, pre-*Miranda* silence does not infringe upon the Fifth Amendment as being "overly restrictive." 937 N.E.2d at 891. Further, although we concluded that Owens had not invoked the right to remain silent and therefore the Fifth Amendment was not implicated, we stated, "We emphasize that we do not today determine that all pre-arrest, pre-*Miranda* silences are unprotected by the Fifth Amendment and that our holding is strictly limited to the particular facts currently before us." *Id.* at 892.

512 U.S. 452, 456 (1994)), *trans. denied*. Cox's statements that he would speak with his attorney and then get in contact with Detective Brown took place during the preliminary investigation of the molestations, before formal criminal proceedings began and before Cox was ever in police custody. Therefore, Cox's Sixth Amendment right to counsel had not attached, so admitting evidence of Cox's statements about wanting to talk to his lawyer before contacting Detective Brown was not a violation of his Sixth Amendment rights.

The trial court did not commit fundamental error in admitting this evidence at trial.

## II. Inappropriate Sentence

Cox contends that his fifty-year aggregate sentence is inappropriate. He argues that he does not fall within the worst class of offenders so he should not have received the maximum sentences for each felony. We disagree.

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.* (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224.

The sentencing range for a Class A felony is twenty to fifty years, with thirty years being the advisory term. Ind. Code § 35-50-2-4. The sentencing range for a Class C felony is two to eight years, with four years being the advisory term. Ind. Code § 35-50-2-6. Here, the trial court sentenced Cox to fifty years for his Class A child molesting convictions and eight years for his Class C felony child molesting convictions, to be served concurrently. All of the sentences were within the statutory ranges.

Regarding the nature of the offenses, there is nothing in the record that indicates that these sentences are inappropriate. The molesting was ongoing over a number of years and began before Victim was even in kindergarten. Cox violated his position of trust that he occupied with Victim as his Mother's live-in boyfriend and essentially a father-figure. Victim estimated that he was molested at least a hundred times, and Cox threatened to cut out Victim's tongue if he ever told anyone about the molestations or if he did not go along with it. The nature of these offenses is serious.

11

Regarding his character, Cox does have a criminal history that includes three misdemeanor convictions for cruelty to animals, domestic battery, and criminal conversion. While the trial court did recognize that Cox had community and family support, there were no other mitigating factors.

After due consideration of the trial court's decision, we cannot say that Cox's aggregate sentence of fifty years is inappropriate in light of the nature of the offenses and his character.

Affirmed.

CRONE, J., and BRADFORD, J., concur.