**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMBERLY A. KLEE**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOSEPH K. STRONG, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1207-CR-535 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
Cause No. 49G22-1202-FB-11885

**February 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Joseph Strong ("Strong") appeals his conviction, following a jury trial, of Burglary, as a Class B felony,[1] and Attempted Theft, as a Class D felony.[2]

We affirm.

**Issues**

Strong presents four issues for our review, which we restate as:

I.    Whether the trial court erred in giving Jury Instruction 6;
II.   Whether the prosecutor committed misconduct and deprived Strong of a fair trial;
III.  Whether Strong's multiple convictions violate the double jeopardy prohibitions of the Indiana Constitution; and
IV.   Whether Strong's sentence was inappropriate under Indiana Appellate Rule 7(B).

**Facts and Procedural History**

On the evening of January 10, 2012, Danny Shipp ("Shipp") left his home in Indianapolis. When he returned home approximately forty-five minutes later, he noticed from outside that the upstairs bedroom light was on, though it had been off when he left. The front door was still locked, and the back door was unlocked, though both had been locked when he left. He unlocked the front door, and when he looked inside he noticed that one of his televisions was propped up against a wall, instead of sitting on the media cabinet where he usually kept it. A board, which had been secured over a broken window after a previous break-in attempt, had been removed from the window in his absence and was leaning against

---

[1] Ind. Code § 35-43-2-1.

[2] I.C. §§ 35-41-5-1, 35-43-4-2.

a wall. A container of spare change, normally kept upstairs, was on the couch. Shipp called the police, and exited the house.

When Officer Shawn Holmes of the Indianapolis Metropolitan Police Department ("IMPD") arrived, he cleared the house with another officer, and Shipp reentered his home. Items had been "tossed around" throughout the home, as if they had been examined and discarded. (Tr. at 62.) On the open back porch was a plastic bin containing a computer screen that had been upstairs, a microwave that had been in the kitchen, some loose wires, and some ammunition for Shipp's firearm.

Officer Christopher Clouse ("Officer Clouse"), an IMPD evidence technician, arrived on scene. He photographed the items that had been moved, and dusted for fingerprints. He obtained fingerprints from the inside of the glass of the back security door, the inside of the outer pane of the broken window, the microwave, a laptop, the television propped against a wall, and the computer screen inside the plastic container. Linda Bailey, an IMPD latent print examiner, later identified the prints from the inside of the outer pane of the broken window and from the computer screen inside the plastic container as belonging to Strong,

On February 24, 2012, the State charged Strong with Burglary, as a Class B felony, and Attempted Theft, as a Class D felony. A jury trial was conducted on May 31, 2012, at the conclusion of which the jury found Strong guilty as charged, and the trial court entered judgment of conviction.

On June 14, 2012, the trial court held a sentencing hearing, and imposed a sentence of twenty years imprisonment for Burglary, and three years imprisonment for Attempted Theft,

with the terms run concurrently.

Strong now appeals.

**Discussion and Decision**

<u>Jury Instruction 6</u>

Strong contends that the trial court abused its discretion by giving Final Instruction 6.

The instruction provides:

Evidence relevant to the issues herein may be either direct or circumstantial.

Direct evidence means evidence that directly proves a fact, and that, if true, conclusively establishes the fact.

Circumstantial evidence means evidence that proves a fact from which you may conclude the existence of another fact.

It is not necessary that facts be proved by direct evidence. Both direct evidence and circumstantial evidence are acceptable as a means of proof. A conviction may be based solely on circumstantial evidence. Where proof of guilt is by circumstantial evidence only, it must be so conclusive and point so convincingly to the guilt of the accused that the evidence excludes every reasonable theory of innocence.

For example, direct evidence that an animal ran in the snow might be the testimony of someone who actually saw the animal run in the snow. Circumstantial evidence might be the testimony of someone who only saw the animal's tracks in the snow.

(App. at 59.) Strong challenged at trial, and now challenges on appeal the final paragraph of

the instruction, arguing that it is misleading and places too much emphasis on the fingerprint

evidence the State presented at trial.

"The purpose of a jury instruction is to inform the jury of the law applicable to the

facts without misleading the jury and to enable it to comprehend the case clearly and arrive at

4

a just, fair, and correct verdict." Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001) (internal quotation marks omitted). In reviewing a trial court's decision to give or refuse tendered jury instructions, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. Springer v. State, 798 N.E.2d 431, 433 (Ind. 2003). Jury instruction is a matter assigned to trial court discretion, and an abuse of that discretion occurs when instructions, taken as a whole, mislead the jury as to the applicable law. Ham v. State, 826 N.E.2d 640, 641 (Ind. 2005).

The courts of this State have long disapproved instructions that unduly "emphasize one particular evidentiary fact, witness, or phase of the case[.]" Id. at 641-42 (internal quotation marks omitted); see, e.g., Ludy v. State, 784 N.E.2d 459, 462 (Ind. 2003) ("[t]o expressly direct a jury that it may find guilt based on the uncorroborated testimony of a single person is to invite it to violate its obligation to consider all the evidence[]"); Dill, 741 N.E.2d at 1232-33 ("although evidence of flight may, under appropriate circumstances, be relevant, admissible, and a proper subject for counsel's closing argument, it does not follow that a trial court should give a discrete instruction highlighting such evidence[]").

Here, the challenged portion of Final Instruction 6 states:

> For example, direct evidence that an animal ran in the snow might be the testimony of someone who actually saw the animal run in the snow. Circumstantial evidence might be the testimony of someone who only saw the animal's tracks in the snow.

(App. at 59.) The challenged paragraph merely provides examples of direct and circumstantial evidence, and therefore is not misleading. Furthermore, the challenged

5

paragraph makes no explicit reference to fingerprints, and thus does not improperly emphasize the fingerprint evidence the State presented at trial. The trial court did not err in giving Final Instruction 6.

Prosecutorial Misconduct

Strong contends that the prosecutor committed misconduct by commenting on Strong's failure to explain the existence of fingerprints linking him to the scene of the crime. Strong argues that the prosecutor's comments were directed towards Strong's choice not to testify, and thus he was deprived of a fair trial.

The Fifth Amendment to the United States Constitution prohibits the State from commenting at trial on a defendant's failure to testify in his own defense. Owens v. State, 937 N.E.2d 880, 893 (Ind. Ct. App. 2010), trans. denied. Such a comment violates a defendant's privilege against compulsory self-incrimination if a jury could reasonably interpret the comment as an invitation to draw an adverse inference from a defendant's silence. Id. However, if the comment, in its totality, addresses evidence other than the defendant's failure to testify, it is not grounds for reversal. Id. The prosecutor may, for example, comment on the uncontradicted nature of the State's evidence without violating the defendant's Fifth Amendment rights. Id.

When a claim of prosecutorial misconduct has been properly preserved for appeal, the reviewing court first determines whether the prosecutor engaged in misconduct, and if so, whether the misconduct had a probable persuasive effect on the jury. Ritchie v. State, 809 N.E.2d 258, 268 (Ind. 2004), cert. denied. "A claim of improper argument to the jury is

6

measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated instances of misconduct which would evidence a deliberate attempt to improperly prejudice the defendant." Id. at 269 (internal quotation marks omitted).

To preserve a claim of prosecutorial misconduct for appeal, the defendant must ask the trial court at the time the misconduct occurs to admonish the jury, or move for mistrial if admonishment is inadequate. Castillo v. State, 974 N.E.2d 458, 468 (Ind. 2012). Where, as here, a party fails to request an admonishment or move for a mistrial, that failure precludes appellate review of the claim unless the alleged misconduct amounts to fundamental error. Id. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006). To be fundamental error, the misconduct must have: made a fair trial impossible; been a clearly blatant violation of basic and elementary principles of due process; or presented an undeniable and substantial potential for harm. Castillo, 974 N.E.2d at 468.

In his closing argument, defense counsel contended that none of Strong's fingerprints had been found inside Shipp's dwelling, and stated: "I think that is pretty convincing proof that [Strong] was never inside that dwelling and certainly you'd be well within the evidence to conclude that." (Tr. at 132.) Defense counsel then argued that two inferences could be drawn from the evidence, and the jury should choose the inference that pointed to Strong's innocence. During the State's rebuttal argument, the prosecutor observed that no evidence had been presented explaining the presence of Strong's fingerprints at the scene of the crime:

7

Yeah, there were no prints of the defendant inside the house. There weren't any prints of Mr. Shipp inside the house either, so I guess we should infer that he wasn't inside the house at all even though he lived there. There were lots of reasons, lots of explanations you could come up with for why Mr. Strong's prints were where they were. There's no reasonable explanation aside from the fact he committed burglary. He can't explain why his prints [were] on that [computer] screen in the bottom of that tote, on the upside down [computer screen]. He can't explain why his fingerprints were on the inside—

(Tr. at 135.)

At this point defense counsel objected, and a sidebar conference was conducted out of the hearing of the jury. The prosecutor then resumed the argument, and stated: "When I say, he, I mean [defense counsel] can't give you an explanation, a reasonable explanation for how those prints got there. No matter how many explanations he wants to give you, that's all speculation." (Tr. at 135.) Defense counsel neither requested an admonishment nor moved for a mistrial.

While the prosecutor's remarks initially arguably may have alluded to Strong's failure to testify, his comments following the sidebar conference clarified that he had been referring to defense counsel's failure to present evidence explaining Strong's fingerprints at the scene of the crime, rather than Strong's failure to personally present such evidence. As such, the prosecutor's remarks, in their totality, address evidence other than the defendant's failure to testify.

Furthermore, we observe that the prosecutor's remarks were made during the rebuttal phase of closing arguments. In his own closing argument, defense counsel contended that the lack of fingerprints inside the house pointed to Strong's innocence. He further argued that there was a plausible alternate explanation for the fingerprints on the inside of the broken

window and on the microwave, and that two inferences could be drawn from the evidence, one pointing to Strong's guilt, and one pointing to Strong's innocence. He asked the jury to choose the inference that pointed to Strong's innocence.

Prosecutors are entitled to respond to allegations and inferences raised by the defense, even if the prosecutor's response otherwise would be objectionable. Cooper, 854 N.E.2d at 836. Here, the prosecutor's response was permissible. We therefore conclude that Strong was not deprived of a fair trial.

## Double Jeopardy

Strong contends that his convictions for both Burglary and Attempted Theft violate the double jeopardy prohibition of the Indiana Constitution. Specifically, he argues that his convictions constitute the same offense under the "actual evidence" test set forth in Richardson v. State, 717 N.E.2d 32 (Ind. 1999), because there is a reasonable possibility that the jury used the same facts proving the intent element of Burglary to prove the elements of Attempted Theft.

Indiana's Double Jeopardy Clause, embodied in Article 1, Section 14 of the Indiana Constitution, provides: "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. In Richardson, the Indiana Supreme Court established a two-part test for analyzing double jeopardy claims:

> [T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

9

717 N.E.2d at 49 (emphasis in original). The statutory elements and actual evidence tests are separate considerations under the double jeopardy analysis. Id. at 52-53. Thus, even where the statutory elements necessary to convict a defendant of one charged offense are not the same as the statutory elements necessary to convict a defendant of another charged offense, the convictions may nonetheless constitute a violation of double jeopardy "if the actual evidence presented at trial demonstrates that each offense was not established by separate and distinct facts." Castillo v. State, 734 N.E.2d 299, 303 (Ind. Ct. App. 2000), summarily aff'd on trans., 741 N.E.2d 1196 (Ind. 2001); see also Richardson, 717 N.E.2d at 53.

To establish that two challenged offenses constitute the same offense under the actual evidence test, the defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense also may have been used to establish the essential elements of a second challenged offense. Redman v. State, 743 N.E.2d 263, 267 (Ind. 2001) (citing Richardson, 717 N.E.2d at 53). Indiana's "Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." Spivey v. State, 761 N.E.2d 831, 833 (Ind. 2002). Multiple convictions may stand as long as each conviction is "supported by proof of at least one unique evidentiary fact not required for any other conviction." Miller v. State, 790 N.E.2d 437, 439 (Ind. 2003) (citing Bald v. State, 766 N.E.2d 1170, 1172 (Ind. 2002)). "In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of

10

counsel." Lee v. State, 892 N.E.2d 1231, 1234 (Ind. 2008).

Burglary, as a Class B felony, is committed when a person breaks and enters the dwelling of another person, with intent to commit a felony therein. I.C. § 35-43-2-1. Attempted Theft, as a Class D felony, is committed when a person, acting with the culpability required for theft—knowingly or intentionally exerting unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use— engages in conduct that constitutes a substantial step toward commission of theft. I.C. §§ 35-41-5-1, 35-43-4-2. A key distinction between Burglary and Attempted Theft is that Burglary is completed once a person breaks into a residence if the person has the intent to knowingly or intentionally exert unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use. See I.C. § 35-43-2-1. Attempted Theft requires an actual substantial step toward knowingly or intentionally exerting unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use. See I.C. §§ 35-41-5-1, 35-43-4-2.

In the charging information for Burglary, the State alleged that Strong:

> [D]id break and enter the . . . dwelling of . . . Shipp, . . . with intent to commit the felony of Theft therein; that is, with intent to knowingly exert unauthorized control over the property of . . . Shipp, with intent to deprive . . . Shipp of any part of its value or use[.]

(App. at 18.) And in the charging information for Attempted Theft, the State alleged that Strong:

> [D]id attempt to commit the crime of Theft, which is to knowingly or intentionally exert unauthorized control over the property, that is: computer screen, of . . . Shipp, with the intent to deprive . . . Shipp of any part of the

11

value or use of said property, by engaging in conduct, that is: by moving [computer] screen to back porch, which conduct constituted a substantial step toward commission of said crime of Theft[.]

(App. at 18-19.)

The evidence presented to the jury included testimony that the board covering a broken window of Shipp's home had been removed from the window, that Strong's fingerprints were found on the inside of the outer pane of the broken window, and that several items had been moved around inside Shipp's home, including a television which had been moved from its normal location and propped against an interior wall. A reasonable fact-finder could conclude from this evidence that Strong had broken and entered Shipp's residence, with the intent to knowingly exert unauthorized control over Shipp's property, with intent to deprive him of part of its value or use.

Furthermore, the evidence presented to the jury also included testimony that several of Shipp's belongings, including a computer screen, had been moved from various locations inside the house to a plastic container placed outside on the back porch, and that a fingerprint belonging to Strong had been found on the downward-facing side of that computer screen. A reasonable fact-finder could conclude from this evidence that Strong had taken a substantial step toward knowingly exerting unauthorized control over Shipp's computer screen, with intent to deprive him of part of its value or use.

Strong has failed to demonstrate that there is a reasonable possibility that the jury relied upon the same facts to convict Strong of both charges. Therefore his convictions for both do not create a double jeopardy violation.

12

Sentence

Strong contends that his twenty-year sentence for Burglary is inappropriate, and requests that we revise his sentence to the advisory sentence of ten years.

This Court has independent authority to review the appropriateness of sentences under the Indiana Constitution and Indiana Appellate Rule 7(B). In Reid v. State, the Indiana Supreme Court reiterated the standard by which our state appellate courts independently review criminal sentences:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.

876 N.E.2d 1114, 1116 (Ind. 2007) (internal quotation marks and citations omitted).

Our supreme court has stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. One purpose of appellate review is to attempt to "leaven the outliers." Id. at 1225. "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Id. at 1224.

Strong was convicted of Burglary, as a Class B felony, and Attempted Theft, as a

13

Class D felony. A Class B felony carries a sentencing range of six years to twenty years, with a statutory advisory sentence of ten years. I.C. § 35-50-2-5. A Class D felony carries a sentencing range of six months to three years, with a statutory advisory sentence of one and one-half years. I.C. § 35-50-2-7. The court sentenced Strong to the maximum possible term of twenty years imprisonment for Burglary, and the maximum possible term of three years imprisonment for Attempted Theft, with the terms run concurrently.

As Strong only challenges his sentence for Burglary, we first examine the nature of that offense. Strong forcibly entered Shipp's home by removing a board covering a broken window. Combined with the intent to commit a felony inside Shipp's home, this was sufficient to complete the act of Burglary. However, Strong then went further and rummaged through Shipp's belongings, staging several items for later removal, such as a large television Strong propped against a wall, and a computer screen, microwave, some loose wires, and some ammunition that Strong gathered in a plastic bin on the back porch. Strong's actions went beyond the act of Burglary.

We turn now to Strong's character. At the time of the offense in this case, Strong was on probation for two unrelated criminal convictions, including Robbery While Armed with a Deadly Weapon, as a Class B felony. Beginning at age eleven, Strong accrued five juvenile adjudications, three of which would have been felonies had they been committed by an adult. Before the offense in this case, he was convicted of three criminal charges as an adult, including one conviction for Robbery While Armed with a Deadly Weapon, as a Class B felony. He committed the offense in this case less than one year after being released from the

14

Indiana Department of Correction. Furthermore, Strong received thirteen incident reports while in the Juvenile Detention Center, and twenty-one incident reports while in the Indiana Department of Correction; some of the incidents were serious, including fighting, physical assault and threats, battery without a weapon or injury, belligerent behavior and throwing chairs, inappropriate sexual behavior, being in an unauthorized area, unauthorized possession of property, and being a habitual conduct rule violator. Strong's behavior indicates that he harbors a general disregard for authority, an unwillingness to conform his behavior to acceptable standards, and an unwillingness to rehabilitate himself.

We acknowledge that Strong earned a GED while incarcerated, and that he was diagnosed as being emotionally disabled as a youth, and as suffering from Attention Deficit Hyperactivity Disorder and Attention Deficit Disorder. However, in light of the nature of the offense and his character, Strong has not persuaded us that the twenty-year sentence was inappropriate.

## Conclusion

The trial court did not err in giving Final Instruction 6. Strong waived his claim of prosecutorial misconduct on appeal, and the prosecutor's statements were neither misconduct nor fundamental error. Strong's convictions for Burglary, as a Class B Felony, and Attempted Theft, as a Class D Felony, do not violate the Double Jeopardy provisions of the Indiana Constitution. Strong's twenty-year sentence for Burglary is not inappropriate.

Affirmed.

VAIDIK, J., and BROWN, J., concur.

15