# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES MIRA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1305-CR-245 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Dennis W. Lopes, Judge Pro Tempore
Cause No. 49F18-1107-FD-51687

**December 20, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

James Mira appeals his conviction for theft as a class D felony. Mira raises one issue, which we revise and restate as whether the trial court committed fundamental error in admitting certain evidence. We affirm.

FACTS AND PROCEDURAL HISTORY

On June 10, 2011, Robin Ludlow left her home in Indianapolis for between one hour and one hour and forty-five minutes to pick up her children from school. When she left her home, an air conditioning unit which her husband Brian had disconnected from the home was at the side of the home. While Robin was away, Jennifer Sheard, the Ludlows' neighbor, observed Mira and another individual in front of the Ludlows' home loading the air conditioning unit into the bed of a pickup truck and drive away. Sheard knew Mira because he was another neighbor's son-in-law. Upon returning home Robin noticed that the air conditioning unit was missing, and the police were contacted.

Detective Stephen Carroll of the Indianapolis Metropolitan Police Department was assigned to investigate the theft, and on June 29, 2011, he presented a photo array to Sheard, who identified Mira as one of the men she observed removing the air conditioner. On July 1, 2011, Detective Carroll mailed a letter to Mira at his mother-in-law's address stating that Mira was "a suspect in a larceny" and that Mira "needed to contact" him. Transcript at 29. Detective Carroll subsequently went on a vacation, and after returning on July 11, 2011, while "catching up on . . . voicemails," noted that Mira "had called and left [] a voicemail" stating that he had received the letter and asking Detective Carroll to call him back. Id. at 26. On July 13, 2011, Detective Carroll called and spoke with Mira

2

about arranging a meeting. Mira stated that he needed to check his schedule and would call back; however, he did not do so.

On July 22, 2011, the State charged Mira with theft as a class D felony. On October 31, 2012, the court held a bench trial in which the State elicited without objection Detective Carroll's testimony regarding writing the letter, talking to Mira on the phone, and Mira not calling him back. Mira testified and denied involvement in the theft. During cross-examination, the prosecutor asked Mira "why did you never get back with the Detective," to which Mira's counsel objected based upon attorney-client privilege, and the court sustained the objection, noting that "why he got back to the Detective or not could be an area where he was exercising his 5th Amendment right and I don't think that at that point there he should be required to answer that question." Id. at 52-53. During closing argument, the prosecutor argued the credibility of Sheard's identification of Mira, disputed the defense's theory regarding whether Mira owned a pickup truck in June 2011, and did not mention Mira's decision to not call Detective Carroll back. The court found Mira guilty as charged. On April 24, 2013, the court held a sentencing hearing and sentenced Mira to two years in the Department of Correction.

## DISCUSSION

The issue is whether the trial court committed fundamental error in admitting certain evidence. Generally, a trial court's ruling on the admission of evidence is reviewed for an abuse of discretion. Noojin v. State, 730 N.E.2d 672, 676 (Ind. 2000). Errors in this regard are not reversible if such admission constituted harmless error. Fox v. State, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), reh'g denied, trans. denied.

3

However, as Mira recognized, here the evidence being challenged was not objected to when it was presented at trial. Consequently, in order to avoid waiver of this issue Mira invokes the fundamental error doctrine, which permits appellate review of otherwise procedurally defaulted claims. See Southward v. State, 957 N.E.2d 975, 977 (Ind. Ct. App. 2011). "The fundamental error doctrine is 'extremely narrow,' requiring an error 'so prejudicial that a fair trial is impossible.'" Id. (quoting Sasser v. State, 945 N.E.2d 201, 203 (Ind. Ct. App. 2011), trans. denied). "Blatant violations of basic principles, coupled with substantial potential or actual harm and denial of due process constitute fundamental error." Id.; see also Benson v. State, 762 N.E.2d 748, 755 (Ind. 2002) ("To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. To be fundamental error, an error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.").

Mira argues that although "[t]he United States Supreme Court recently held that a defendant's refusal to answer an investigating officer's questions before the defendant has been arrested or Mirandized can be used substantively and for impeachment unless the defendant explicitly stated that he was refusing to answer the officer's questions on Fifth Amendment grounds" in Salinas v. Texas, 133 S. Ct. 2174, 2180 (2013), "this court is free to interpret Article One, Section Fourteen of the Indiana Constitution so as to give broader protection to Indiana's citizens." Appellant's Brief at 5, 7 (citing Ajabu v. State, 693 N.E.2d 921, 927 (Ind. 1998)). Mira suggests that "this court hold that, under the Indiana Constitution, an individual's exercise of his right against self-incrimination

4

cannot be used as substantive evidence in a criminal prosecution regardless of when the exercise of the privilege occurred and regardless of whether the individual explicitly invoked the privilege." Id. at 8. In so arguing, Mira maintains that "[i]t defies logic to allow the State to use an individual's exercise of a constitutional right as evidence of guilt simply because the right was exercised before the State's duty to administer *Miranda* warnings arose." Id.

The State begins by arguing that "[t]he transcript does not reveal a blatant error, nor does it reveal any prejudice to Mira from the trial court's consideration of the now-challenged evidence," and, moreover, he "[h]as not shown a lack of fundamental fairness." Appellee's Brief at 8. In so arguing, the State highlights that Mira was tried to the bench, and this court generally presumes that "a court renders its decisions solely on the basis of relevant and probative evidence." Id. at 9. The State also argues that "[c]ontrary to Mira's argument, this case does not involve a defendant's exercise of constitutional rights being used as substantive or impeachment evidence" and was instead "better characterized as evidence about the course of a police investigation," and contends that the United States Supreme Court's opinion in Salinas is not implicated. Id. at 10. The State maintains that even if we accept Mira's framing of the issue, he "merely requests a different result under the Indiana Constitution but does not advance a specific reason based on constitutional text, history, or structure." Id. at 15. Finally, the State notes that the court at Mira's trial "refused to allow any evidence about *why* Mira did not contact Detective Carroll," that "[i]t is therefore specious to suggest that Mira's silence

5

was a factor in the trial court's finding Mira guilty," and that accordingly there can be no finding of fundamental error. Id. 18.

This court's opinion in Owens v. State, 937 N.E.2d 880 (Ind. Ct. App. 2010), reh'g denied, trans. denied, is instructive. In Owens, Owens's step-daughter C.R. disclosed to school officials and police that she had been molested by Owens, and during the investigation Detective Scott McKinney "tried to contact Owens on his cell phone more than once." 937 N.E.2d at 883-884. Detective McKinney also "went to Owen's Hamilton County residence with a DCS caseworker," found him not to be home, "left his business card with a message requesting that Owens contact him," and repeated the procedure two days later," but Detective McKinney never did hear from Owens. Id. at 884. At Owens's jury trial, Detective McKinney testified about his investigation and specifically testified "that he tried to call Owens more than once but failed to reach him," that "he went to Owens's home and left his business card asking Owens to call him," and that he never received contact from Owens. Id. at 884-885.

On appeal, this court first noted that Owens failed to preserve the error for review because he did not object and that we could only reverse if he demonstrated the existence of fundamental error. Id. at 885. We found that Owens could not "avoid procedural default because he fail[ed] to demonstrate that the admission of Detective McKinney's testimony constitutes error, let alone fundamental error." Id. After discussing pre-Salinas federal case law demonstrating that there was a "split as to whether the Constitution permits the prosecution to use a defendant's pre-arrest, pre-Miranda silence as substantive evidence in its case-in-chief," id. at 886, we stated that in Owens's case,

6

"even under the cases holding that a defendant's pre-arrest, pre-Miranda silence is protected by the Fifth Amendment, Owens's lack of response to Detective McKinney is outside the ambit of the Fifth Amendment." Id. at 891. Specifically, we held:

> Recall that in the majority of those cases, the court specifically considered whether the defendant invoked the right to remain silent and concluded that the defendant's statement or action was an invocation of the right. See Combs[ v. Coyle, 205 F.3d 269, 286 (6th Cir. 2000), reh'g denied, cert. denied, 531 U.S. 1035, 121 S. Ct. 623 (2000)]; [United States v. Burson, 952 F.2d 1196, 1200 (10th Cir. 1991), cert. denied, 503 U.S. 997, 112 S. Ct. 1702 (1992)]; Coppola[ v. Powell, 878 F.2d 1562, 1567 (1st Cir. 1989), cert. denied, 493 U.S. 969, 110 S. Ct. 418 (1989)]; see also Berghuis v. Thompkins, 560 U.S. 370, 130 S. Ct. 2250, 2260, 176 L.Ed.2d 1098 (2010) (holding that during police interrogation right to remain silent must be invoked unambiguously)[, reh'g denied]. Based on these cases and the particular circumstances present here, Owens's mere lack of response does not support a finding that he invoked the right to remain silent. Perhaps Owens did not respond because the wind blew Detective McKinney's cards away, or perhaps Owens was very ill or too busy, or perhaps he just did not like the police. Also, since Detective McKinney never told Owens why he wanted to talk to him, there is no basis to conclude that Owens even would have known that he was the subject of an investigation. Based on the foregoing, we conclude that the State did not infringe upon Owens's Fifth Amendment privilege against self-incrimination by introducing evidence that Detective McKinney did not hear from Owens. It follows that no error, let alone fundamental error, occurred in the admission of the testimony.

Id. at 891-892.

We find this reasoning applicable in this case. As noted, evidence was presented at trial that Mira did not call Detective Carroll back in order to schedule a meeting to discuss the theft of the air conditioner. However, during the bench trial, when the prosecutor attempted to delve into the reason Mira did not follow up with Detective Carroll, Mira's counsel objected, and the objection was sustained. As Owens notes, the failure on Mira's part to follow up with Detective Carroll does not support a finding that

7

he invoked his right to remain silent. To the extent that Mira requests that we overturn the reasoning of <u>Owens</u> and find that this evidence was erroneously admitted pursuant to Article 1, Section 14 of the Indiana Constitution, we agree with the State that Mira does not offer a specific reason and merely requests a different result. We can find no basis to disagree with the reasoning of <u>Owens</u> based upon Article 1, Section 14 of the Indiana Constitution.[1]

CONCLUSION

For the foregoing reasons, we affirm Mira's conviction for theft as a class D felony.

Affirmed.

ROBB, C.J., and BARNES, J., concur.

---

[1] We observe that one distinction between the defendant in <u>Owens</u> and Mira is that Mira was told by Detective Carroll in the initial letter that he was the subject of a larceny investigation, while the defendant in <u>Owens</u> was apparently never specifically told by officers the nature of the investigation. Even so, however, we do not believe that the circumstances here, including that Mira initially phoned Detective Carroll upon receiving the letter, told Detective Carroll during their phone conversation that he would check his schedule and call the detective back but subsequently failed to do so, was tantamount to invoking one's right to remain silent.

8