## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 15 2015, 8:57 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Indianapolis, Indiana

Tyler G. Banks
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shawn Thayer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 15, 2015

Court of Appeals Case No.
79A04-1503-CR-110

Appeal from the Tippecanoe
Superior Court 1

The Honorable Randy J. Williams,
Judge

Trial Court Cause No.
79D01-1403-FC-15

**Altice, Judge.**

**Case Summary**

[1] Following a jury trial, Shawn Thayer was convicted of class C felony Battery Resulting in Serious Bodily Injury,[1] class D felony Theft,[2] class D felony Strangulation,[3] and class B misdemeanor Criminal Mischief.[4] On appeal, Thayer presents the following issues: (1) Whether the State presented sufficient evidence to support his class C felony battery conviction; and (2) Whether the State impermissibly presented evidence that Thayer exercised his Fifth Amendment right to remain silent.

[2] We affirm.

## Facts & Procedural History

[3] On November 3, 2013, Thayer and his on-again, off-again girlfriend, Shannon Scheumann, made plans to watch a movie together at Thayer's home in Lafayette. At Thayer's request, Scheumann arrived at Thayer's home at around 8 p.m. and brought a bottle of vodka with her. When Scheumann arrived, Thayer took the bottle to make cocktails for both of them. The two began watching the movie, and Thayer finished his drink a short time later. He got up to make himself another and grabbed Sheumann's unfinished drink to

---

[1] Ind. Code § 35-42-2-1. Effective July 1, 2014, this offense was reclassified as a Level 5 felony. Because Thayer committed this offense prior to that date, it retains its prior classification as a class C felony.

[2] Ind. Code § 35-43-4-2. Effective July 1, 2014, this offense was reclassified as a class A misdemeanor. Because Thayer committed this offense prior to that date, it retains its prior classification as a class D felony.

[3] I.C. § 35-42-2-9. Effective July 1, 2014, this offense was reclassified as a Level 6 felony. Because Thayer committed this offense prior to that date, it retains its prior classification as a class D felony.

[4] I.C. § 35-43-1-2.

top it off. When Thayer brought Scheumann her refilled drink, he told her he had made it much stronger than the first. Scheumann thought the drink had a strange, bitter taste, and she did not finish it.

[4] The next thing Scheumann recalled was being on the floor, with Thayer choking her from behind and swearing at her. Scheumann's vision then began to fade, as if someone had "turned the lights out on [her]." *Transcript* at 129. Scheumann's next memory was lying on the floor in the same spot, with Thayer out of her view. Scheumann got up, exited the house, and walked a couple of steps before feeling "tremendous pain" in the back of her head and falling to the ground. *Id.* at 132. Thayer then began screaming at Scheumann and kicking her as she lay on the ground. Thayer also kicked Scheumann's car.

[5] Thayer's neighbors, Travis and T.J. Wycoff, heard the commotion and went outside to see what was going on. As he approached Thayer's home, Travis saw Scheumann on the ground and Thayer on top of her. Scheumann was screaming for Thayer to get away from her. Travis told T.J. to call 911 before going to Scheumann's aid. When Travis knelt down to prop up Scheumann's head, he felt a large knot on the back of her head. Thayer demanded that Travis leave his property, at one point taking off his shirt and "puff[ing] his chest up" aggressively. *Id.* at 56. Travis refused to leave the property without Scheumann, and police arrived a short time later.

[6] After Scheumann was transported to the hospital by ambulance, Officer Ryan French attempted to locate her car keys and cell phone. During a consensual

search of Thayer's home, Officer French located a cell phone in Thayer's couch. Thayer claimed the phone belonged to him, but it was in fact Scheumann's.

[7] At the hospital, Scheumann was treated for numerous injuries, including a scalp hematoma, throat and facial swelling, and a fractured rib. It was later determined that Scheumann also had a sprained ankle and injuries to her jaw, which made it difficult for her to open her mouth. These injuries caused Scheumann severe pain.

[8] Thereafter, Thayer was charged with battery causing serious bodily injury, strangulation, theft, and criminal mischief. A two-day jury trial commenced on February 3, 2015, at the conclusion of which Thayer was found guilty as charged. Thayer now appeals. Additional facts will be provided as necessary.

## Sufficiency of the Evidence

[9] Thayer first challenges the sufficiency of the evidence to support his conviction for battery causing serious bodily injury. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a

reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

[10]   In order to convict Thayer of class C felony battery as charged, the State was required to prove that Thayer knowingly or intentionally touched Scheumann in a rude, insolent, or angry manner, and that such touching resulted in serious bodily injury to Scheumann. *See* I.C. § 35-42-2-1. On appeal, Thayer does not dispute that he knowingly or intentionally touched Scheumann in a rude, insolent, or angry manner. Instead, he argues that the State presented insufficient evidence to prove that the touching resulted in serious bodily injury to Scheumann. "Serious bodily injury" is defined by statute as follows: "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." Ind. Code § 35-31.5-2-292.

[11]   The evidence presented in this case was sufficient to establish serious bodily injury in the form of extreme pain. Scheumann suffered a scalp hematoma, facial swelling, swelling in the back of her throat, a fractured rib, a sprained ankle, and injuries to her jaw. At the hospital, she was treated with both prescription painkillers and intravenous morphine. Scheumann testified that as a result of her injuries, she experienced pain like she had never felt before, so severe that she "couldn't think straight." *Transcript* at 181. Scheumann's dentist testified that Scheumann reported suffering "debilitating pain and headaches" as a result of the injuries to her jaw. *Id.* at 260. We are therefore

unpersuaded by Thayer's reliance on *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004) (finding insufficient evidence to support an inference of extreme pain where the victim suffered only an abrasion to her knee, a superficially lacerated lip, and broken pinky finger, did not receive a prescription for pain medication, and did not testify concerning her level of pain). Based on the evidence presented here, the jury could reasonably infer that Scheumann suffered extreme pain as a result of Thayer's attack, which is sufficient standing alone to support a finding of serious bodily injury.

[12] We note further that the evidence was also sufficient to support a finding that Scheumann suffered "permanent or protracted loss or impairment of the function of a bodily member or organ[.]" I.C. § 35-31.5-2-292. Scheumann's dentist, who treated her jaw injuries, testified that he had diagnosed her with acute temporomandibular joint dysfunction. Over two months after the attack, Scheumann still had problems opening her mouth and suffered debilitating pain and headaches as a result of the injuries to her jaw. These injuries caused Scheumann to have such difficulty eating that she lost twenty-five pounds. Further, a radiologist testified that Scheumann's rib fracture would make it difficult to move and breathe freely without pain, and would typically take four to six months to heal. We conclude that the State presented sufficient evidence to support a finding of serious bodily injury.

**Fifth Amendment**

[13] Thayer also argues that the trial court abused its discretion when it allowed the State to elicit testimony concerning Thayer's exercise of his Fifth Amendment right to remain silent. "Rulings on the admission of evidence are subject to appellate review for abuse of discretion." *McHenry v. State*, 820 N.E.2d 124, 128 (Ind. 2005) (footnote omitted). A trial court abuses its discretion when its ruling is clearly against the logic, facts, and circumstances presented. *Gray v. State*, 982 N.E.2d 434, 437 (Ind. Ct. App. 2013).

[14] On direct examination, Thayer testified that he cooperated with the police "absolutely[,] every time." *Transcript* at 286. Then, during the State's cross-examination of Thayer, the following exchange took place:

> Q: If I understand your testimony earlier your statement to your attorney was that you cooperated with the police fully. Is that accurate?
>
> A: Yes.
>
> Q: What about Sergeant [Jay] Rosen? Did you cooperate with Sergeant Rosen?
>
> A: Yes, I did. Yes, I offered Officer Rosen to come to my home and have a sit down conversation with me.

*Transcript* at 294. At that point, Thayer's counsel objected on the basis that the State's question constituted an improper reference to Thayer's invocation of his right to remain silent. The State responded that the question was not improper because Thayer had testified that he cooperated with police. Although the trial

court did not expressly rule on Thayer's objection, neither the question nor his response was stricken from the record. The State went on to assert that Thayer's claim that he had offered to provide a statement to Sergeant Rosen was inaccurate and that Sergeant Rosen would testify to that effect. Thayer did not object, and the trial court ruled that the State would be limited to asking Sergeant Rosen whether Thayer had offered to give a statement. The State subsequently called Sergeant Rosen as a rebuttal witness and, again without objection from Thayer, elicited testimony that Thayer had not offered to give him a statement.

[15] On appeal, Thayer challenges on Fifth Amendment grounds both the State's question regarding whether Thayer had cooperated with Sergeant Rosen and the admission of Sergeant Rosen's testimony. Thayer's argument fails on multiple bases. First, at least with respect to Sergeant Rosen's testimony, Thayer has waived the argument by failing to object at trial. *See Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011) (explaining that failure to object to the admission of evidence normally results in waiver precluding appellate review, and that "an objection to one question does not serve as an objection to another distinct question"). Second, because there is no indication on the record before us that Thayer invoked his Fifth Amendment right to remain silent, he cannot claim the Amendment's protections. *See Salinas v. Texas*, 133 S.Ct. 2174, 2179-81 (2013) (explaining that a witness who desires the protection of the privilege against self-incrimination must claim it, and one generally does not do so by simply standing mute); *Mira v. State*, 3 N.E.3d 985, 989 (Ind. Ct. App. 2013)

(finding no Fifth Amendment violation where evidence was presented that the defendant did not call a detective back to schedule a meeting to discuss a theft investigation because his failure to do so did not support a finding that he invoked his right to remain silent). Third, even assuming *arguendo* that the State's question and Sergeant Rosen's testimony could otherwise be considered a violation of Thayer's privilege against self-incrimination, Thayer opened the door to this testimony by testifying that he had cooperated with the police "absolutely[,] every time." *See Pennycuff v. State*, 745 N.E.2d 804, 813 (Ind. 2001) (concluding that evidence of defendant's silence was admissible to rebut the defendant's claims that he had cooperated with police). For all of these reasons, Thayer has not established a Fifth Amendment violation.

[16] Judgment affirmed.

[17] Riley, J., and Brown, J., concur.